```
              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
                       HOT SPRINGS DIVISION


GEORGIA-PACIFIC CONSUMER
PRODUCT LP
                                                    PLAINTIFF

     v.                   Case No: 6:08-cv-6086

MYERS SUPPLY, INC.
                                                    DEFENDANT
```

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant Myers Supply's Motion for Summary Judgment (Doc. 50), Plaintiff Georgia-Pacific's Motion for Summary Judgment (Doc. 53), and Georgia-Pacific's Motion to Strike (Doc. 64). For the reasons reflected below, Georgia-Pacific's Motion (Doc. 53) is **DENIED,** Defendant Myers Supply's Motion (Doc. 50) is **GRANTED IN PART AND DENIED IN PART,** and Georgia-Pacific's Motion to Strike (Doc. 64) is **DENIED.**

## A. Motion to Strike

Georgia-Pacific seeks to strike the portions of Myers' Response to Georgia-Pacific's Statement of Undisputed Material Facts that do not contain citations to the record. Georgia-Pacific claims that Local Rule 56.1 supports this contention. In its Response to Georgia-Pacific's Motion, Myers requested to amend its Response to Georgia-Pacific's Statement of Uncontested Material Facts.

Local Rule 56.1(b) requires a non-moving party to file "a

separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried." Although the Federal Rules of Civil Procedure require specific facts to survive summary judgment, the Statement of Uncontested Material Facts, like the brief required by Local Rule 7.2, is a supplement to a Motion for Summary Judgment intended to aid the Court. Specific citations to the record are helpful to the Court for its determination of the existence of genuine factual disputes, but are not required by the Local Rules. Georgia-Pacific's Motion to Strike is therefore DENIED and Myers' Request to supplement its statement is GRANTED.

**B. Standard of Review for Summary Judgment**

Summary Judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574 (1986). Once the moving party has met its burden, defeating summary judgment requires "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When a non-moving party has a complete

failure of proof concerning an essential element of its case, that renders all other facts immaterial concerning that claim. *Celotex*, 477 U.S. at 322-23.

**C. Facts and Background**

The following facts are undisputed, except where noted. Georgia-Pacific, a large supplier of commercial paper products and commercial paper product dispensers, introduced its enMotion paper towel dispenser in October 2002. The enMotion uses a ten inch wide paper towel roll and allows for the touch-less dispensing of paper towels. Georgia-Pacific invested considerable resources in the development of the enMotion dispenser. These dispensers display federally registered enMotion and Georgia-Pacific trademarks. There is no genuine dispute that Georgia-Pacific has valid, registered trademarks covering paper towels during the relevant time periods. This trademark registration gives Georgia-Pacific the exclusive right to use "enMotion" in conjunction with paper towels.

Georgia-Pacific leased enMotion dispensers to Brown Janitor Supply in 2003. The lease allows Brown, like other distributors, to sublease the enMotion dispensers with the understanding that Georgia-Pacific retains dispenser ownership.  In return for a dispenser lease, Georgia-Pacific collects a nominal initial payment and seeks to profit through paper towel sales for the leased dispenser. Georgia-Pacific has produced duplicates of the

front side of what it purports to be a sublease of enMotion dispensers between Brown and two of Myers' customers, Gospel Light Baptist Church and Fountain Lake School District. Georgia-Pacific has also produced the back side of a sample lease form that it claims reflects the backside of all lease agreements, including the two in question. The backside contains language that restricts the subleasee to use of Georgia-Pacific paper towels in the subleased Georgia-Pacific dispenser.

Myers' conduct relevant to this dispute is its sales of ten inch wide paper towels, made by Von Drehle Corporation (designation 810B), that can be dispensed from enMotion dispensers.  The 810B paper towels are clearly identified as being manufactured by the Von Drehle Corporation. It is undisputed that because of the packaging there is no likelihood of confusion between Von Drehle paper towels and Georgia-Pacific paper towels at the time of sale. However, neither the Georgia-Pacific towels, nor the Von Drehle towels have any identifying marks on the towels themselves; all indicators of origin are on the packaging and are removed prior to dispenser insertion. The 810B paper towels are materially different by virtue of a different manufacturing process and a different texture.  The 810B paper towels feel more "crinkly" than the enMotion paper towels, which have a more "cloth-like" feel to them.  The 810B paper towels are intended to satisfy the needs of more cost-

AO72A
(Rev. 8/82)

conscious consumers.

Georgia-Pacific introduced evidence of a consumer survey conducted by Dr. Eli Seggev (hereinafter the "Seggev Survey") that indicated that some consumers believe that trademarks on the paper towel dispenser are indicative of the origin of the paper towels. Myers counters the Seggev survey with the Declaration of Kenneth A. Hollander (hereinafter "Hollander Declaration") which questions the validity of the Seggev Survey.

The evidence of infringing conduct is that Myers' sales records reflect that Myers sold 810B paper towels to purported holders of Georgia-Pacific subleasees. Further that Myers received a cease and desist letter, dated July 1, 2008, from Georgia-Pacific. The letter stated that all enMotion dispensers are property of Georgia-Pacific and are subject to lease and sublease agreements. In reply, Myers demanded evidence of a signed lease and continued selling the 810B paper towels to the purported end users of the enMotion dispensers. There is no indication in the record that Myers Supply ever placed 810B paper towels into enMotion paper towel dispensers.

**D. Discussion**

**1. Myers' Direct Trademark Infringement**

In Counts I and III of its Complaint, Georgia-Pacific accuses Myers of direct trademark infringement in violation of Lanham Act sections 32 and 43. Section 43 of the Lanham Act

**AO72A**
**(Rev. 8/82)**

states that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,

15 U.S.C. § 1125(a)(1)(A). Section 32 of the Lanham Act states that

> Any person who shall, without the consent of the registrant--
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive

15 U.S.C. § 1114.

For violations of either section of the Lanham Act, the Defendant must actually use the trademark of the Plaintiff. "The plain language of § 32 of the Lanham Act forbids only the 'use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark ... which ... is likely to cause confusion.'" *Holiday Inns, Inc. v. 800 Reservations, Inc.*, 86 F.3d 619, 625 (6th Cir. 1996). The Lanham act defines "Use in Commerce" as relating to goods as when:

> (A) it is placed in any manner on the goods or their

>     containers or the displays associated therewith or on
>     the tags or labels affixed thereto, or if the nature
>     of the goods makes such placement impracticable, then
>     on documents associated with the goods or their sale,
>     and
>     (B) the goods are sold or transported in commerce

15 U.S.C. § 1127.

In this case, because of the use in commerce requirement, Myers can only be directly liable for the marks it actually uses, and the evidence indicates that the 810B paper towels only carried Von Drehle trademarks.  The parties do not contend that there is any likelihood of confusion between Georgia-Pacific marks and Von Drehle marks. In its Response to Myers' Motion for Summary Judgment, Georgia-Pacific stated that it does not suggest that a typical purchaser is likely to be confused between Von Drehle and Georgia-Pacific trademarks. Finally, the Court notes that Georgia-Pacific admitted that Myers never directly infringed Georgia-Pacific's trademarks on page 12 of its Response to Myers' Motion for Summary Judgment (Doc. 61).

In support of its Motion for Summary Judgment, Georgia-Pacific cites to a series of cases where products were sold, distributed, or packaged with trademarks of more famous companies in such a way to defraud or confuse consumers. The facts of this case are not similar to any of those cases since the items sold by Myers contained only genuine and truthful indications of origin. Therefore, Georgia-Pacific's Motion for Summary Judgment on its direct infringement claims is DENIED and

AO72A
(Rev. 8/82)

Myers' Motion for Summary Judgment on the direct infringement claims is GRANTED.

### 2. Contributory Infringement

In Count II of its Complaint, Georgia-Pacific accuses Myers of contributory infringement. To show contributory infringement, Georgia-Pacific must show that Myers either "(1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. V. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)). As the record is void of evidence of intentional inducement, the Court focuses on the second part of the *Inwood Labs* test. The second part of the test has three elements; actual infringement, knowledge of the infringement, and continued supply of the product after acquiring knowledge of the infringement.

The first element of contributory infringement is actual infringement. To show infringement, a trademark must be used in commerce, defined in the Lanham Act as "(A) it is placed in any manner on the goods or their containers...(B) and the goods are sold or transported in commerce" 15 U.S.C. § 1127. In this case, the enMotion dispensers could be considered a container, the dispensers have valid Georgia-Pacific trademarks, and the goods

are sold in commerce. The remaining question of infringement is whether there is a likelihood of confusions among consumers.

The Eighth Circuit has a six factor test used to evaluate the likelihood of confusion. *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). Those factors are 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers, and 6) evidence of actual confusion. *Id.* Likelihood of confusion is a fact-intensive inquiry. *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630, 634 (8th Cir. 2006).

The Court first evaluates the strength of Georgia-Pacific's marks. "Arbitrary marks comprise those words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services." 2 McCarthy on Trademarks and Unfair Competition § 11:11 (4th ed. 2009). Arbitrary marks are generally considered strong marks, unless the word is commonly used as a mark. *Id.* at § 11:14. Suggestive marks "shed some light upon the characteristics of the goods, but so applied they involve an element of incongruity, and in order to be understood

Page 9 of 16

as descriptive, they must be taken in a suggestive or figurative sense through an effort of the imagination on the part of the observer." *Id.* at 11:64 (citing *Gen. Shoe Corp. v. Rosen*, 11 F.2d 95 (4th Cir. 1940). "Georgia-Pacific" is not commonly used as a mark and neither suggests nor describes any ingredient, quality or characteristic of paper towels or paper towel dispensers and is therefore arbitrary. "enMotion" as applied to the dispensers is suggestive because of the motion activated nature of the dispensers and arbitrary when applied to the paper towels. Georgia-Pacific's arbitrary and suggestive marks are considered strong, and this factor weighs in favor of Georgia-Pacific.

The second factor is the similarity between the Plaintiff's and Defendant's marks. Myers sold Von Drehle paper towels with Von Drehle trademarks that are dissimilar. However, after dispenser insertion, no Von Drehle marks remained visible. This factor does not weigh towards either party.

The third factor is the degree to which the allegedly infringing product competes with the plaintiff's goods. As the ten inch Von Drehle competes directly with the ten inch enMotion towel, this factor weighs in favor of Georgia-Pacific.

The fourth factor is the alleged infringer's intent to confuse the public. There is no evidence of intent to confuse the public, so this factor weighs in favor of Myers.

**AO72A**
**(Rev. 8/82)**

The fifth factor is the degree of care expected of customers. Consumers are expected to exercise a low degree of care when using paper towels, as they are not purchasing them at the time and do not have a choice as to which towel to use in an ordinary restroom. At the time of purchase, customers would exercise a relatively high degree of care since the paper towels in question are commercial and the sales records reflect that they are purchased in high volumes. This factor therefore weighs in favor of neither party.

The sixth factor is actual confusion. "Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." *Mid-State Aftermarket Body Parts*, 466 F.3d at 634 (citing *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 10 (1st Cir. 2004)).

With the Seggev survey, Georgia-Pacific has produced evidence on which a reasonable jury might base a finding of actual confusion. However, with the Hollander Declaration, Myers has raised substantial doubts about the probative value of the Seggev survey. For the purposes of cross motions for Summary Judgment, this factor weighs in favor of Myers for the purpose of Georgia-Pacific's Motion and in favor of Georgia-Pacific for the purposes of Myers' Motion. Based on the record and the

AO72A
(Rev. 8/82)

evaluation of the factors, a genuine factual issue exists concerning the likelihood of confusion and the requirement of infringement.

Next, the Court looks at Myers' knowledge. The undisputed evidence shows that Georgia-Pacific sent a cease and desist letter to Myers and that Myers continued to sell to the purported Georgia-Pacific subleasees. Myers also admitted a ninety-nine percent certainty that the 810B towels would be placed in a Georgia-Pacific dispenser. However, the contents of the cease-and-desist letter are not before the Court, and there is no other evidence that Myers ever had specific knowledge at the time of the sale that would lead it to believe that a particular customer would place the 810B towels in a Georgia-Pacific dispenser. Also, Georgia-Pacific was unable to provide originals or complete copies of the subleases to prove the existence of a sublease to Myers' satisfaction. Regarding the knowledge element, a reasonable jury could find for Myers or for Georgia-Pacific.

Because there are genuine issues of material fact, both Myers' and Georgia-Pacific's Motions for Summary Judgment on Contributory Infringement are DENIED.

**3. Tortious Interference with Contractual Relationships or Business Expectancy**

In Counts VI and VII of its Complaint, Georgia-Pacific

accuses Myers of tortious infeference with its Business and Contractual Relationships. For a claim of tortious interference, Georgia-Pacific must prove: "(1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Vowell v. Fairfield Bay Community Club, Inc.*, 346 Ark. 270, 276, 58 S.W.3d 324, 329 (2001). The Restatement of Torts describes examples of inducing or causing as where persuasion or intimidation is the means of influencing the choice of the party that is terminating the contract. Restatement (Second) of Torts § 766 cmt. h (1979).

In addition, the defendant's conduct must be improper, as evaluated by seven factors. *Vowell*, 346 Ark. at 277, 58 S.W.3d at 329. Those factors are: "(1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties." *Id.* Improper conduct is

sometimes described as a fifth element. *See Knox v. Regions Bank*, 103 Ark. App. 99, 2008 WL 4060998, at *4 (2008).

In this case, the third element, intentional interference inducing or causing a breach or termination of the relationship, Georgia-Pacific has a complete failure of proof. There is no evidence in the record that indicates that Myers persuaded, intimidated, or encouraged any subleasee to breach a contract. The evidence indicates that Myers fulfilled the requests of its customers, but is void of evidence of Myers' intent to cause a breach or inducement of a breach.

The evidence also shows, as a matter of law, that Myers' conduct was not improper. Myers' allegedly tortious conduct was selling ten inch rolls of Von Drehle 810B paper towels to Georgia-Pacific subleasees and was no different than that of an ordinary distributor selling to its customers. There is no evidence showing that Myers was motivated by any desire other than to fulfill the requests of its customers. The interests sought to be interfered with did not restrict the subleasees from the allegedly tortious conduct of Myers, i.e. purchases of paper towels by companies other than Georgia-Pacific. Society has an interest in promoting competition and not unduly burdening sellers to pry into the uses of its wares, especially into sales of something as common and as innocuous as paper towels. As any decisions to violate a sublease occurred after

**AO72A**
**(Rev. 8/82)**

the sale of the paper towels and did not involve any Myers personnel, Myers' conduct is remote to the interference. Finally, Georgia-Pacific and Myers had no relationship other than through the events leading to this lawsuit and are not direct competitors. The factors all point to no improper conduct on the part of Myers.

Through the testimony of Dan Silk, the Georgia-Pacific corporate officer with responsibility for the leased trademark dispenser systems, Georgia-Pacific conceded at the preliminary injunction hearing that sales of 810B paper towels for uses other than in proprietary Georgia-Pacific dispensers are unobjectionable. Georgia-Pacific reiterated this concession in its Response to Myers' Statement of Undisputed Material Facts (Doc. 62), stating that purchases of ten inch paper towels by its subleasees do not, by themselves, breach its rights under the enMotion sublease agreements.

No genuine issues of material fact exist concerning Georgia-Pacific's Intentional Interference claims. Concerning Count VI of Georgia-Pacific's Complaint, Georgia-Pacific's Motion is DENIED and Myers' Motion is GRANTED.

**4. Common Law Unfair Competition, Conversion, and Deceptive Trade Practices**

At the hearing on the Summary Judgment motions, the parties conceded that the claims of Common Law Unfair Competition, Conversion, and Deceptive Trade Practices (Counts IV, V, and

**AO72A**
**(Rev. 8/82)**

VIII) are moot and were DISMISSED.

**E. Conclusion**

The direct infringement and tortious interference claims (Counts I, III, VI, and VII) within Georgia-Pacific's Motion for Summary Judgment is **DENIED** and Myers' Motion for Summary Judgment is **GRANTED**. Regarding Contributory Infringement (Count II), Georgia-Pacific's Motion for Summary Judgment is **DENIED** and Myers' Motion for Summary Judgment is **DENIED**. As the parties agree that Georgia-Pacific's other claims (Counts IV, V, and VIII) are moot, Myers' Motion for Summary Judgment is **GRANTED**. Georgia-Pacific's claims based on False Representation, Counterfeiting, Unfair Competition, Conversion, Tortious Interference with Contractual Relationships, Tortious Interference with Business Relationship, and Deceptive Trade Practices are **DISMISSED WITH PREJUDICE**. This matter remains set for jury trial on the claim of contributory infringement on July 6, 2009 in Hot Springs.

IT IS SO ORDERED this 26th day of June, 2009.

/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge